## Rando, Appellant, *v.* State Workmen's Insurance Fund et al.

Argued March 3, 1941.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*Roger J. Dever,* for appellant.

*S. H. Torchia,* with him *Ralph H. Behney* and *Claude
T. Reno,* Attorney General, for appellees.

OPINION BY KELLER, P. J., July 18, 1941:

This appeal is concerned with the supplement to the
Workmen's Compensation Law of June 2, 1915, P. L.
736 (as amended and re-enacted), known as the 'Oc-
cupational Disease Act' of July 2, 1937, P. L. 2714, and
chiefly with the interpretation to be given sections 3,
4, 5 and 7 of said supplement.

Prior to the enactment of this supplement, no pro-
vision had been made in this Commonwealth for the
payment of workmen's compensation to employees for
disability or death resulting from occupational diseases.
The Act of June 2, 1915, supra, was limited to disability
and death resulting from *accidental* injury in the course
of employment.

The supplement of 1937 was passed to remedy or sup-
ply this lack. Its history shows a series of changes

and amendments, some, no doubt, in the nature of a compromise, resulting in the statute as passed.

At the same session, and less than a month before, the General Assembly had passed the Act of June 4, 1937, P. L. 1552, amending and re-enacting the Workmen's Compensation Law and considerably increasing the compensation payable for total disability, partial disability, and death.

Section 306(a) of the original Act of 1915, dealing with the compensation payable for total disability, which allowed compensation equal to 50% of the injured employee's weekly wages for 500 weeks but provided that "the compensation shall not be more than ten dollars per week, nor less than five dollars per week, and shall not exceed in aggregate the sum of four thousand dollars", had been raised in 1919[1] to 60% of the weekly wages, but not more than twelve dollars nor less than six dollars per week, and not more than $5000 in the aggregate; and in 1927[2] to 65% of the weekly wages for 500 weeks, but not more than fifteen dollars nor less than seven dollars per week, and not more than $6500 in the aggregate. The Act of June 4, 1937, P. L. 1552, increased the maximum weekly compensation for total disability[3] to not more than $18 nor less than $12 per week for 500 weeks, *but fixed no aggregate limit,* and provided that if the total disability became permanent, after the expiration of 500 weeks $30 per month should be payable until death.[4] This Act became generally effective on January 1, 1938.

---

[1] Act of June 25, 1919, P. L. 642.

[2] Act of April 13, 1927, P. L. 186.

[3] The maximum weekly compensation for partial disability was raised from $15 to $18, and the maximum period of payment from 300 weeks to 400 weeks.

[4] The practical effect of this provision with reference to permanent total disability is shown in the following figures: If the claimant lived five years after the expiration of 500 weeks follow-

The Occupational Disease Act, supra, effective January 1, 1938, declared twelve classes of diseases therein named to be 'occupational diseases', among them, (k) silicosis or anthraco-silicosis in any occupation involving direct contact with, handling of, or exposure to dust of silicon dioxide ($Si\ O_2$), and (1) asbestosis in any occupation involving direct contact with, handling of, or exposure to the dust of asbestos. We mention these specially because the Act treats them differently in some important respects from all the other occupational diseases named. This was perhaps due to the fact that they included diseases prevalent in the great anthracite coal mining industry, and it was argued by some that their inclusion in the act on the same basis as the other diseases would be disastrous to an industry already injuriously affected by competition with bituminous coal, oil, and 'bootleg' coal. In any event, the discrimination was made, resulting in some problems of interpretation.

The supplemental act provides (sec. 3) that the several provisions of the Workmen's Compensation Act shall be applicable to it as far as consistent with its terms, and shall be construed as including 'occupational diseases' and the resultant effects thereof, including death, in addition to 'injury' and 'personal injury' by accident; and that the word 'disabled' as used in this act "means disabled from earning full wages in the employment in which the employe was employed"; which we understand to mean that if the occupational disease prevents the employee from earning full wages in that employment, he is disabled, partially or totally, depending on whether he can earn some wages, but not full wages, or none at all. 'Disability' means the state of being so disabled; and the date when the disability

---

ing the accident, he could receive total compensation of $10,800; ten years, $12,600; fifteen years $14,400; twenty years, $16,200, etc. The compensation to widow and children might be even higher.

occurs from occupational disease shall be deemed to be the date of injury entitling the employee to compensation, unless otherwise provided.

The fourth section provides:

· "When an employer and employee shall be subject to the provisions of article three of the Workmen's Compensation Act as therein provided, *compensation for occupational disease shall be paid in all cases by the employer* according to the schedule provided in such act, subject, however, to the special terms and conditions relative thereto as set forth in this act." This is important, as respects the words italicized, in construing the last sentence of the fifth section.

Section 5 deals with silicosis, anthraco-silicosis and asbestosis, and provides in paragraph (a) that compensation for them shall be paid only when it is shown that the employee has had an aggregate employment, in an occupation having a silica or asbestos hazard, of at least two years in this Commonwealth during a period of eight years next preceding the date of disability. Paragraph (b) provides that compensation shall not be payable for *partial* disability due to silicosis, anthraco-silicosis or asbestosis. (See *Moffett v. Harbison-Walker Refractories Co.*, 339 Pa. 112, 14 A. 2d 111). "Compensation shall be payable, as otherwise provided in this Act, for total disability or death caused primarily (as definitely distinguished from a contributory or accelerating cause) by silicosis, anthraco-silicosis, or asbestosis, or [by those diseases] when accompanied by active pulmonary tuberculosis or streptococcic infection of the lung." Then follows the last sentence above referred to: "The total liability of the employer unto the employee or his dependents under this section shall not exceed the sum of thirty-six hundred dollars ($3,600)."

The seventh section reads as follows:

"(a) In the case of such occupational diseases as the Workmen's Compensation Board shall determine de-

velops [sic] to the point of disablement only after an exposure of five or more years, the compensation for disability or death due to such diseases shall, for a period of ten years immediately succeeding the effective date of this act, be payable jointly by the Commonwealth and the employer, as follows: If disability occurs, or if no compensable period of disability occurs if death occurs, during the first year in which this act becomes effective, the employer shall be liable for and pay one-tenth of the compensation for such disability or death, and the remainder of such compensation shall be paid by the Commonwealth out of moneys to the credit of the Second Injury Reserve Account in the State Workmen's Insurance Fund. Thereafter for each successive year of such ten-year period in which disability occurs, or if no compensable period of disability occurs if death occurs, the employer shall be liable for and shall pay one-tenth more of such compensation, and the remainder of such compensation shall be paid by the Commonwealth out of moneys to the credit of the Second Injury Reserve Account in the State Workmen's Insurance Fund. After the expiration of such ten-year period, the employer shall pay the compensation for disability or death occurring thereafter in full.

"(b) The sum of one hundred thousand dollars ($100,000) is hereby appropriated out of the General Fund to the State Workmen's Insurance Board, for payment into the State Workmen's Insurance Fund to the credit of the Second Injury Reserve Account, and is hereby appropriated for the carrying out of the purposes of paragraph (a) of this section. The aforesaid sum of one hundred thousand dollars ($100,000) shall as soon as practical be repaid into the General Fund of the State Treasury out of moneys to the credit of the Second Injury Reserve Account in the State Workmen's Insurance Fund, and such moneys are hereby appro-

priated to the State Workmen's Insurance Board for this purpose."[5]

It will be noted that section 7 is not in terms confined to total disability, nor to disability and death resulting from silicosis, anthraco-silicosis or asbestosis. It also covers partial disability up to 400 weeks, and applies to any occupational disease included in the act which the Workmen's Compensation Board shall determine develops to the point of disablement only after an exposure of five or more years. However, in so far as it includes *partial* disability from such a disease, it is excluded from applying to silicosis, anthraco-silicosis or asbestosis by the specific provision of section 5(b).

The board determined that the anthraco-silicosis which caused the appellant, Rando's total disability in this case was such an occupational disease as developed to the point of disablement only after an exposure of five or more years, and hence that section 7 of the act applied, and as his total disability occurred during 1938 —the first year in which the act became effective—his compensation was payable jointly by the employer and

---

[5] We may note in passing that this section intended to impose no 'individual' liability on the Commonwealth or the State Workmen's Insurance Fund for the payment of any compensation, beyond the $100,000 appropriated out of the General Fund to the State Workmen's Insurance Fund to the credit of the Second Injury Reserve Account created under section 321 of the Act of June 4, 1937, P. L. 1552, which was to be repaid to the State Treasury as soon as practicable. Section 321 was declared unconstitutional by the Supreme Court in *Rich Hill Coal Co. v. Bashore*, 334 Pa. 449, 499, 7 A. 2d 302. It sought to create a fund to be used for various specified purposes by compelling employers or their insurance carriers to pay into it $1500 for the death of any otherwise compensable employee who left no dependents. The payments referred to in section 7 to be paid by the Commonwealth were to be paid out of this fund. The State Workmen's Insurance Fund is not liable to pay anything except such moneys as may have been paid to it for the credit of the Second Injury Reserve Account.

the Commonwealth, in the proportion of one-tenth by the employer and the remainder—nine-tenths—by the Commonwealth, *out of moneys to the credit of the Second Injury Reserve Account in the State Workmen's Insurance Fund.* The narrow point at issue in this case is whether $3600 is the total amount payable to Rando, or that is only the maximum amount payable by the *employer,* and the remainder (nine-tenths) of the compensation is payable by the Commonwealth as aforesaid, up to nine-tenths of the limit fixed in the Act of June 4, 1937, P. L. 1552, to wit, 65% of the employee's weekly wages, but not exceeding $18 per week, for the first 500 weeks; and the same proportion of $30 per month for the balance of his life, if his total disability should become permanent. See figures under note 4. The board decided that $3600 was the limit of Rando's compensation, of which one-tenth was payable by the employer and nine-tenths by the Commonwealth. On appeal, the court below affirmed the ruling and entered judgment accordingly.

The claimant appealed.

The matter is not free from difficulty, but, on the whole, we think the construction of the board and the court below is correct.

Appellant's main reliance is on the fact that in the previous compensation acts of 1915, 1919 and 1927 supra, the general clause limiting the amount of compensation payable to all claimants for total disability (sec. 306(a)) always read, "but the compensation shall not ...... exceed in the aggregate the sum of four thousand [or five thousand, or six thousand five hundred] dollars"; while in section 5 of this supplemental act, it reads, "The total liability of the employer unto the employee or his dependents under this section [relating to silicosis, anthraco-silicosis and asbestosis] shall not exceed the sum of thirty-six hundred dollars." But he overlooks that in section 4, which is general,

and not limited to silicosis, anthraco-silicosis and asbestosis, the charging clause also reads, "compensation for occupational disease shall be paid in all cases *by the employer* ...... subject to the special terms and conditions relative thereto as set forth in this act". It would seem to follow, therefore, that when in section 7(a) special provision was made as respects certain occupational diseases of long exposure and development, for the payment of the *compensation* for disability or death due to such diseases jointly by the employer and the Commonwealth out of the Second Injury Reserve Account, the term 'compensation' related back to the term used in section 4, and referred to the compensation otherwise paid by the employer, which as respects the diseases silicosis, anthraco-silicosis and asbestosis was expressly limited to $3600. Furthermore, if the phrase used in section 5 of the Act now under consideration, had been used in section 306(a) of the Workmen's Compensation Act of 1915 and its amendments of 1919 and 1927, and they had read: "The total liability of the employer unto the employee or his dependents shall not exceed four thousand [or five thousand or six thousand five hundred] dollars," the meaning would have been the same as the phrase actually employed.

The act made two clearly marked distinctions: First as between silicosis, anthraco-silicosis and asbestosis on the one hand and all other occupational diseases on the other—(1) it limited the compensation for disability to total disability, and excluded partial disability altogether; and (2) it limited the total amount payable by the employer for such total disability to $3600; this discrimination probably being the result of a compromise based on the suggestion heretofore made. See Legislative Journal, June 5, 1937, p. 7373, remarks of Hon. E. A. Caputo in the House of Representatives.[6]

---

[6] "Mr. Speaker and Members of the House, in presenting this report, I wish to call the attention of the members of the House

Second, as between occupational diseases which develop to the point of disablement only after an exposure of five or more years, on the one hand, and all other occupational diseases on the other, the act discriminated in favor of employers as respects the former, by imposing on the Commonwealth— to be paid out of the Second Injury Reserve Account—payment of part of the compensation which otherwise would be payable wholly by the employer, varying—in gradually decreasing steps of one-tenth each—from nine-tenths thereof, if the disability occurred during the first year the Act became effective, to one-tenth if the disability occurred in the ninth year; while the employer's share rose correspondingly from one-tenth, if the disability occurred in the first year, to ten-tenths if it occurred in the tenth year—the purpose apparently being to give a period of time for such employers to make arrangements to carry the new burden thus placed upon them. The fact that anthraco-silicosis seems to come within this last category should not serve to increase the total amount payable for disability from $3600 to $9000 or more. Otherwise a claimant whose total disability from anthraco-silicosis occurred during the first year following the effective date of the Act, and became permanent, might

to the fact that the bill does not represent the thought of the sponsor of the bill in its entirety. We feel, however, that since the session of the legislature is about to close, this bill should be passed in order that we in Pennsylvania may have done something for the workers of Pennsylvania along this line. I wish to call to the attention of the members of the House, particularly section 5 (b) of this bill as amended by the Senate. That section would have entirely deprived the workers in coal mines particularly, and in those industries where silicosis and other diseases are probable, from receiving compensation. As amended by the conference committee, this bill permits that to a certain extent, and would restore compensation to those people affected by those diseases, and for this reason, members of the House, and because this session is drawing to a close, I feel, and my colleagues feel that in a small way we have contributed to the benefit of those workers in this bill. I ask the support of the House for this bill."

receive nearly $15,000 compensation if he lived sufficiently long, (see note 4), gradually decreasing by one-tenth each year as to disability occurring during later years until the tenth and subsequent years when such a claimant could get no more than $3600.[7] We do not think the act discloses any intention to favor one so disabled during 1938 over one disabled in 1947 and subsequent years. Furthermore, if a claimant was totally disabled in 1938 by anthraco-silicosis following an exposure of *less* than five years, he would not come in under section 7 and his total compensation would un-

---

[7] The difference in concrete figures between the constructions of appellant and appellees respectively is shown in the following tables illustrating the respective amounts payable to a claimant who was totally and permanently disabled by anthraco-silicosis and lived five years after the first 500 weeks of disability, based on the year in which such disability occurred. Table A represents the amounts payable under appellant's construction of the Act; Table B, under appellee's construction. Both are based on a continuance of the Occupational Disease Act of 1937.

Table A — Year Disability began or occurred

|  | 1938 | 1939 | 1940 | 1941 | 1942 |
|---|---|---|---|---|---|
| Commonwealth pays | $9720 | 8640 | 7560 | 6480 | 5400 |
| Employer pays | $1080 | 2160 | 3240 | 3600 | 3600 |
| Total compensation | $10800 | 10800 | 10800 | 10080 | 9000 |

Table A continued—Year Disability began or occurred

|  | 1943 | 1944 | 1945 | 1946 | 1947 & thereafter |
|---|---|---|---|---|---|
| Commonwealth pays | $4320 | 3240 | 2160 | 1080 | None |
| Employer pays | $3600 | 3600 | 3600 | 3600 | 3600 |
| Total compensation | $7920 | 6840 | 5760 | 4680 | 3600 |

Table B — Year Disability began or occurred

|  | 1938 | 1939 | 1940 | 1941 | 1942 |
|---|---|---|---|---|---|
| Commonwealth pays | $3240 | 2880 | 2520 | 2160 | 1800 |
| Employer pays | $ 360 | 720 | 1080 | 1440 | 1800 |
| Total compensation | $3600 | 3600 | 3600 | 3600 | 3600 |

Table B continued—Year Disability began or occurred

|  | 1943 | 1944 | 1945 | 1946 | 1947 & thereafter |
|---|---|---|---|---|---|
| Commonwealth pays | $1440 | 1080 | 720 | 360 | None |
| Employer pays | $2160 | 2520 | 2880 | 3240 | 3600 |
| Total compensation | $3600 | 3600 | 3600 | 3600 | 3600 |

questionably be limited to $3600. We do not read the act as justifying an award to him of $5400 less than to one who was so disabled after an exposure of five or more years.

While not conclusive on the matter, we think the provisions of the Occupational Disease Act of June 21, 1939, No. 284, P. L. 566, effective October 1, 1939, which repealed and superseded the act under consideration shed some light on the subject. That act, while it substantially retained the distinctions present in the Occupational Disease Act of 1937 above noted, made it clear beyond question that the compensation payable to an employee who was totally disabled by reason of silicosis, anthraco-silicosis or asbestosis should not exceed $3600, whether payable solely by the employer or jointly by the employer and the Commonwealth out of the Occupational Disease Fund therein created—see sections 301 (a)2 and 308.

We are of opinion that in this respect the Act of 1939 did not change, but merely clarified, a disputed provision in the Act of 1937; and that the construction given the act by the board and the court below is in accord with both the letter and the spirit of the act when considered in its entirety.

The constitutionality of the Occupational Disease Act of 1937, or of section 7 thereof, was not raised or argued and we have not considered it.

The appeal is dismissed and the judgment is affirmed.