Jones *v.* Philadelphia & Reading Coal & Iron
Company et al., Appellants.

Argued December 6, 1943. Before BALDRIGE, STADT-
FELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.
(KELLER, P. J., absent).

*S. H. Torchia,* with him *Ralph H. Behney, James H. Duff,* Attorney General, *E. Mac. Troutman* and *Penrose Hertzler,* for appellants.

*Roger J. Dever,* for appellee.

OPINION BY RENO, J., March 3, 1944:

The compensation authorities awarded claimant compensation for a total disability under the Occupational Disease Compensation Act of July 2, 1937, P. L. 2714, 77 PS 1101, et seq., which was affirmed by the court below. The Commonwealth and the employer took separate appeals which were heard together and will be decided in one opinion.

The claim-petition was filed on September 19, 1938, and alleged that claimant "became totally disabled as the result of anthraco-silicosis on September 13, 1938." The case was heard on January 9, 1942, and the referee's decision was filed on February 26, 1942. There is no explanation of the long interval between the filing of the petition and the hearing.

Appellants admit in their brief, "that claimant is entitled to compensation under the act in question providing that the legal question herein involved, to-wit: whether claimant's disability is total in nature, can be decided in claimant's favor." Upon that question the uncontradicted evidence is that, after having been employed in coal mines for approximately thirty-five years,

claimant became disabled by anthraco-silicosis and on September 13, 1938, ceased to work. In December, 1938, he secured employment as a labor foreman for W.P.A. and retained that job until May, 1939. Thereafter, he served as a night watchman for an oil company and worked at various times on an hourly basis for that concern until November, 1941. During 1940 he earned $505, and in 1941 he earned $700. At the date of the hearing he was not employed. During all of this time he was under a doctor's care, who testified that claimant could only perform selective light work and that only while "standing still, if he does anything requiring walking he would get out of breath very quickly."

The Act of 1937, supra, provided that (§5b): "Compensation shall not be payable for partial disability due to silicosis, anthraco-silicosis or asbestosis." The burden was, therefore, upon claimant to show total disability. Neither total nor partial disability were defined by the act. The act provided (§3) a definition for "disabled", which "means disabled from earning full wages in the employment in which the employe was employed." Concerning the definition, this Court has said: "We understand [it] to mean that if the occupational disease prevents the employee from earning full wages in that employment, he is disabled, partially or totally, depending on whether he can earn some wages, but not full wages, or none at all": *Rando v. State Workmen's Insurance Fund,* 145 Pa. Superior Ct. 386, 389, 21 A. 2d 530. That is, whether an occupational disease causes total or partial disability is to be determined by the effect it has had upon earning power, and for this purpose workmen's compensation cases dealing with injuries from accidents are the guides to our decision in cases involving occupational diseases. If under the cases, claimant's condition amounts to a total disability, he is

entitled to an award; if it is only a partial disability, he is not entitled to any compensation.

"Whether the disability is total or partial is a question of fact and is for the consideration and determination of the compensation authorities": *Byerly v. Pawnee C. Co.*, 105 Pa. Superior Ct. 506, 509, 161 A. 460. "And our review is confined to ascertaining whether or not the finding of total disability is sustained by substantial competent evidence": *Hughes v. Kellogg*, 139 Pa. Superior Ct. 580, 582, 13 A. 2d 98. Whether a claimant is totally or partially disabled depends upon the effect the injury or disease has upon his earning power: *Keiser v. Phila. & Reading C. & I. Co.*, 134 Pa. Superior Ct. 104, 4 A. 2d 188. If it appears that, because of the disease, he is not able to do light work of a general character, he is entitled to compensation for a total disability: *Consona v. R. E. Coulborn*, 104 Pa. Superior Ct. 170, 158 A. 300. The undisputed evidence here is that claimant is able to do only light work of a selective nature. He is confined to work which can be performed by him while standing still, and this limitation necessarily restricts him to work of a most selective nature.

The fact that he actually earned wages after the disease disabled him, does not of itself bar an award for total disability. "Earning power is not determined solely by ascertaining the amount of wages an employee received after he sustained an injury. That fact is to be considered with all the other elements affecting his earning power, but it is not absolutely controlling. ...... In many instances, wages actually received are unsatisfactory evidence of earning power. The injured person may be especially favored, or he may be doing a character of work that does not truly reflect his earning power": *Henry v. Pittsburgh Railways Co.*, 131 Pa. Superior Ct. 252, 254, 200 A. 294. Moreover, since it is the duty of a claimant to make an honest effort to

rehabilitate himself within his limitations (*Lewis v. Bethlehem Mines Corp.*, 140 Pa. Superior Ct. 128, 13 A. 2d 107), proof of the performance of work and the receipt of wages after an injury will not operate in every instance to deprive a claimant of compensation. Each case depends upon its own facts and when, as here, the evidence indicates that claimant performed only light work of a highly selective nature, his status as a totally disabled workman is not thereby disturbed.

This case markedly resembles *Fegan v. Maccabees,* 133 Pa. Superior Ct. 333, 2 A. 2d 511, where claimant, a victim of traumatic epilepsy, had been found totally disabled. While receiving compensation he worked for wages on four occasions; he solicited advertising for a newspaper; he served as a clerk to a Wyoming State relief agency; and he sold goods on a commission basis. This Court ruled against the contention that this evidence of employment demonstrated that the claimant was only partially disabled. It was a case like this, in the "shadow zone between partial and total disability" (p. 337), and this Court held then, as we must now, that: "It is not our duty to balance the evidence but we must determine whether there was any evidence to sustain the findings of the board and if so, we are bound thereby": (p. 338). There is ample evidence to support the board's findings, and we cannot disturb them.

Judgment affirmed.