Hurtuk, Appellant, *v.* H. C. Frick Coke Company.

Argued April 16, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Anthony Cavalcante*, for appellant.

*Buell B. Whitehill*, with him *Whitehill & Lane*, for appellee.

OPINION BY DITHRICH, J., July 19, 1945:

Claimant filed his petition under the Occupational Disease Act of June 21, 1939, P. L. 566, 77 PS §1201 et seq. for compensation for total disability as a result of miner's asthma. The referee found that he was not subject to a silica hazard over his period of employment

with the defendant; that he was not totally disabled within the purview of the act, and disallowed compensation. Both the board and the court of common pleas affirmed; hence this appeal.

Claimant has been a coal miner all his life in the soft coal mines of Western Pennsylvania. He started to work for the defendant company in 1925 and continued in its employ until February 4, 1943. A few days prior to that date, he was forced to cease working in the mine because of what is commonly known as miner's asthma and is so described in the petition and referred to in the act as anthraco-silicosis. He was given an outside job, shoveling red dog, but that proved to be too strenuous for him, and on February 4, 1943, he discontinued work altogether. In his claim petition he alleges that he is totally disabled as a result of employment in an occupation having a miner's asthma hazard.

There is sufficient competent evidence to support the referee's findings of fact, affirmed by the board, which are in part as follows: "Fourth: The claimant is totally disabled for coal mining, and has been since he ceased work on February 4, 1943, because of a lung condition, which has been diagnosed an anthraco-silicosis. He is however, able to do work of a lighter nature, such as a watchman or an elevator operator." Claimant's physician, a lung specialist, the only medical expert who testified, said: "His disability is permanent but I do not think it can be classified as total. He is unfit to do heavy laboring work and should not return to the mine. I believe he might do light work which would not require sustained physical effort ...... Q. Can you be a little more specific about it? What form of light work? A. Well, I suppose the man could sit and run an elevator. I suppose he could sit in front of a gate and be a watchman. I don't know how much cleaning he could do if he had to use a broom or something like that. I imagine it would be very limited

...... Q. And, Doctor, the long and short of the matter is he could do light work if it did not require very much physical exertion and if it were all outside or at a place free from dust. That is about the situation? A. That is the sum and substance of it."

The principal question raised is whether the claimant is *totally* disabled[1] within the meaning of the act. The compensation authorities have found that although the claimant is totally disabled as a coal miner, he is able to do' work of a lighter nature. Appellant contends that from this finding it must follow, as a matter of law, that claimant is totally disabled. We do not agree with this contention. The Occupational Disease Act of 1939, supra, does not define the word "disabled." The Occupational Disease Compensation Act of July 2, 1937, P. L. 2714, §3, 77 PS §1103, repealed by the Act of 1939, provided: "The word 'disabled,' as herein used, means disabled from earning full wages in the employment in which the employe was employed." Concerning this definition, we said in *Rando v. State Workmen's Insurance Fund et al.*, 145 Pa. Super. 386, 389, 21 A. 2d 530, 531: "...... we understand [it] to mean that if the occupational disease prevents the employee from earning full wages in that employment, he is disabled, *partially or totally,* depending on whether he can earn some wages, but not full wages, or none at all." (Italics supplied) To determine whether the claimant is partially or totally disabled by the occupational disease, we may use as a guide our workmen's compensation cases involving accidents: *Jones v. Phila. & Reading Coal & Iron Co. et al.*, 154 Pa. Super. 513, 36 A. 2d 172.

The general rule is that if the claimant is unable to

---

[1] "Compensation shall not be payable for partial disability due to silicosis, anthraco-silicosis, or asbestosis." Compensation is payable only for *total* disability caused by these diseases: *Occupational Disease Act of 1939*, supra.

do light work he is entitled to compensation for total disability: *Consona v. R. E. Coulborn & Co. et al.,* 104 Pa. Superior 170, 158 A. 300; *Jones v. Phila. & Reading Coal & Iron Co. et al.,* supra. The case of *Babcock v. Babcock & Wilcox Co. et al.,* 137 Pa. Superior 517, 9 A. 2d 492, pointed out the distinction between "...... those who are able to do light work *in general* and those who are so limited in capacity that they are only fitted to perform *special service* ......" (Italics supplied) If the claimant is able to do *light work in general,* he is only *partially* disabled: *Tomlinson v. Hazle Brook Coal Co.,* 116 Pa. Superior 128, 176 A. 853; *Earley v. Phila. & Reading Coal & Iron Co.,* 144 Pa. Superior 301, 19 A. 2d 615; *Hughes v. H. Kellogg & Sons et al.,* 139 Pa. Superior 580, 13 A. 2d 98. After a careful review of the record in the instant case, we conclude there is ample evidence to support the finding of the compensation authorities that the claimant is able to do light work in general, and not only light work of a selective nature as appellant contends. The testimony of the medical expert definitely indicates that light work in general is what he had in mind. Reading from his report, he first mentioned light work which would not require sustained physical effort. When asked to be more specific, he suggested the jobs of an elevator operator or a watchman. He affirmatively said that the claimant could do the work of an attendant at the lamp house. But these were merely suggestions or examples; no exact type of work was specified. There was not the slightest implication that he could perform only work of a selective nature or highly specialized character. The only restrictions placed by the medical expert were that the work must not require very much physical exertion (light work) and that it be free from the dust of the mine. Since the claimant is able to do light work, it may be presumed that such work is available: *Consona v. R. E. Coulborn & Co. et al.,* supra; *Babcock v. Babcock & Wilcox Co. et al.,* supra. We think it was

properly concluded that the claimant was not totally disabled within the meaning of the act.

Appellant also assigns as error the referee's fifth finding of fact: "No testimony was offered by the claimant to prove a silica hazard, nor did the defendant adduce any testimony in this case. Therefore this record is barren of any evidence that would warrant a finding that the claimant, over his period of employment with the defendant, was subject to a silica hazard." The record supports this finding of fact. Although the doctor diagnosed claimant's lung condition as anthraco-silicosis, claimant offered no evidence to prove that he was subject to a silica hazard in the defendant's employ. The Occupational Disease Act of 1939, supra, §301(d), 77 PS §1401(d), provides: "Compensation for silicosis or anthraco-silicosis, and asbestosis, shall be paid only when it is shown that the employe has had an ...... employment ...... in an occupation having a silica or asbestos hazard." Proof of the silica hazard, therefore, is an essential part of claimant's case. "The burden of proof rested on claimant to show by a preponderance of the evidence all the elements necessary to support an award:" *Ewing v. Alan Wood Steel Co.*, 138 Pa. Superior 519, 12 A. 2d 121; *Connelly v. Bachman et al.*, 155 Pa. Superior 372, 38 A. 2d 348. Claimant failed to meet this burden. He neither proved that he was totally disabled nor that he was exposed to a silica hazard. Consequently, his claim for compensation must be disallowed.

The order is affirmed.