## Leaver *v.* The Midvale Company, Appellant.

Argued October 15, 1947. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent.)

*Martin P. Snyder*, with him *Henry R. Heebner* and *Morgan, Lewis & Bockius*, for appellant.

*Gilbert Cassidy, Jr.*, for appellee.

OPINION BY FINE, J., March 8, 1948:

The novel question for determination in this workmen's compensation case is whether John Leaver, the claimant, admittedly entitled to total disability payments before and after his military service, should have the amounts received from the army through his military service set off against disability compensation which might otherwise be paid him. The referee refused disability payments; the board reversed and the court below affirmed the board. The employer, The Midvale Company, has appealed.

The accident occurred on February 24, 1942, when the claimant fell from a pile of molds and suffered a fracture of the skull, fractures of the left arm and three ribs, plus facial disfigurement. By agreement, payments for total disability began on March 4, 1942, and were made thereafter until March 25, 1944, except for the periods May 13 to May 29, 1942, and March 11 to June 8, 1943, when appellee performed light work and was paid on a basis of partial disability.

On January 18, 1943, the employer filed a petition to terminate on information that the claimant had been inducted into the army. This petition was later withdrawn when it was learned that the claimant's draft board had rejected him. However, on January 13, 1944, claimant was inducted into the armed forces and on April 19, 1944, the employer filed another petition to

terminate averring the induction and army service of the claimant. After hearing on petition and answer, on April 25, 1946, the referee declined to terminate compensation but held that the claimant was not entitled to disability payments during his army service. The board, in reversing the referee, concluded that: "Since it has not been proved that there has been any change from total disability in the claimant's condition since January 13, 1944, the petition for termination . . . must be dismissed." The board ordered the resumption of compensation payments for total disability from March 23, 1944, until the claimant's disability ceased or changed.

The claimant was called for cross-examination by appellant and testified to a military record showing repeated army hospitalizations, until he received his medical or "disability" discharge from the army on August 22, 1945. One month after induction, he was hospitalized for about two weeks at Fort Bragg after he had "passed out, out on the range." Approximately six months later he was again hospitalized for a three-week period at Fort Meade after "a spell". Prior to his hospitalization there he had been removed from the artillery service and given light duties in headquarters' service. Subsequently, he was sent to Camp Carson, Colorado, where he was hospitalized for approximately one week. At that time he was given light work in signal service, repairing and maintaining portable radio battery sets. He was last hospitalized in Camp Gruber and there examined by a psychiatrist who told him "[You] shouldn't have been in the service in the beginning, that the condition seemed to be agitated by the work all the time, and being on [your] feet, and the work was light but [you] couldn't hold up under the pressure." His history of hospitalization, which was due to a psycho-neurotic condition of dizziness, fainting spells and "ringing in his ears", led his military superiors to have him assigned to headquarters and to technical groups where the physical exertion

would be little, if any. The appellant concedes claimant's total disability both immediately before and upon his discharge from the army for psycho-neurosis. As the employer was the moving party to terminate the agreement for total disability the burden was upon it to show the disability resulting from the accident was removed, or so reduced as to warrant lesser compensation than that provided in the open agreement. *Carson v. Real Estate-Land T. & T. Co.,* 109 Pa. Superior Ct. 37, 165 A. 677. Appellant's contention, therefore, that the claimant, while in the army, was not totally disabled because of the work that he there performed, falls far short of sustaining that burden cast upon it to show a change in the claimant's condition commensurate with the requirements as set forth in *Rennard v. Rouseville Cooperage Co.,* 141 Pa. Superior Ct. 286, 15 A. 2d 48. The learned court below, in a well-reasoned opinion affirming the board, said: ". . . the Board has found as a fact that Leaver's condition has not changed from one of total disability since January 13, 1944, the date of his induction. The defendant, seeking, by its petition to terminate, to change the terms of the compensation agreement, had the burden of proof: . . . We see no reason to alter the Board's conclusion, the factual settlement of whether disability is partial or total being a matter within the Board's exclusive competence. Byerly v. Pawnee Co., 105 Pa. Superior Ct. 506 (1932) : Jones v. Philadelphia and Reading Co., 154 Pa. Superior Ct. 513 (1943). . . . It would be odd to hold that a man whose inability to do Army work has been proved by his medical discharge should be held to have an earning power during the period when his incapacity was being demonstrated. His medical discharge is compelling proof that he was unable to do even light work."

In *Hughes v. H. Kellogg and Sons et al.,* 139 Pa. Superior Ct. 580, 582, 13 A. 2d 98, we said: "To determine whether a claimant is totally disabled within the meaning of the Workmen's Compensation Act, the true test

to be applied is: did the injury deprive him of his earning power? Keiser v. Philadelphia & Reading C. & I. Co., 134 Pa. Superior Ct. 104, 4 A. 2d 188. Before this claimant is entitled to compensation for total disability, it must appear from the evidence, either that he is not able to do even light work of a general character or that remunerative employment in that class of labor is not available to him: Consona v. R. E. Coulborn & Co. et al., 104 Pa. Superior Ct. 170, 158 A. 300; Maishock v. State Workmen's Ins. Fund, 129 Pa. Superior Ct. 118, 195 A. 143; Keiser v. Philadelphia & Reading C. & I. Co., supra."

There is a fundamental distinction between those persons who are able to do light work in general and those able to perform a special class of work not generally available. In the latter class are the totally disabled, those who are not able uninterruptedly to do even light work owing to the physical limitations due to accidental injury. "The proper test is not whether the claimant is able to do exactly the same kind of work as he did before the injury, but whether his earning power is entirely destroyed so that he cannot obtain remunerative employment": Byerly v. Pawnee C. Co., 105 Pa. Superior Ct. 506, 161 A. 460. A review of the competent evidence in this case clearly reveals the claimant was physically incapacitated by accidental injury to uninterruptedly perform the light work assigned him by his superiors in the military service. Since his medical discharge he has done no light work although he has expressed a conviction he could perform light work if available. For such willingness or for such conviction of his ability to work lightly, he should be commended, not penalized; the fact is that he is not working, because, as conceded by appellant, he is totally disabled. Unquestionably, the character and extent of claimant's injury, his inability to earn wages in any kind of employment for which he is fitted and his frequent hospitalization in the army amply support the board's finding of total disability.

Appellant further contends that the amounts which claimant received from the army, including cash, board and lodging, show clearly that claimant "had earning power and that the minimum measure of that earning power is the cash equivalent of the pay, board and lodging, and allowances which he received" and the amounts so received should be applied in reduction of the amount of compensation which appellant might otherwise be required to pay him.

Appellant concedes that there are no American cases in point but urges that two English cases: *Port of London Authority v. Gray*, (1919) 1 K.B. 65; and *Doncaster Amalgamated Collieries, Ltd. v. Leech*, (1941), 1 K.B. 649, support its view. In both English cases a voluntary enlistment occurred whereas, in the present case, appellee was *involuntarily* inducted into the military service. The court below aptly said: "The situation is quite different when a man is involuntarily inducted, as Leaver was. He no longer can be said to have agreed that he can do a certain kind of remunerative work and prove it by doing the work. He can maintain with reason that he was the victim of a lax draft board doctor, and . . . there is evidence that while at Camp Gruber Leaver was told by an Army psychiatrist that he never should have been taken in the first place."

The character of the work performed by claimant, while in the military service, did not truly reflect the earning power; nor was the income from his military service dependent upon the nature or extent of his personal services. A claimant in some cases may recover for total disability notwithstanding he has income from a source that does not involve personal services. As stated in *Jones v. Phila. & Rdg. C. & I. Co.*, 154 Pa. Superior Ct. 513, 36 A. 2d 172: "The fact that he actually earned wages after the disease disabled him, does not of itself bar an award for total disability. 'Earning power is not determined solely by ascertaining the amount of wages an employee received after he sustained an injury.

That fact is to be considered with all the other elements affecting his earning power, but it is not absolutely controlling. . . . In many instances, wages actually received are unsatisfactory evidence of earning power. The injured person may be especially favored, or he may be doing a character of work that does not truly reflect his earning power': Henry v. Pittsburgh Railways Co., 131 Pa. Superior Ct. 252, 254, 200 A. 294. Moreover, since it is the duty of a claimant to make an honest effort to rehabilitate himself within his limitations (Lewis v. Bethlehem Mines Corp., 140 Pa. Superior Ct. 128, 13 A. 2d 107), proof of the performance of work and the receipt of wages after an injury will not operate in every instance to deprive a claimant of compensation." Elements affecting earning power in addition to actual wages received after injuries are: (1) the character and extent of the physical injury or disability; (2) his productivity or efficiency in the same employment as compared to what it was immediately prior to the injury; and (3) his ability to earn wages in any kind of employment for which he is fitted.

The income which claimant received for army services does not constitute "wages" within contemplation of the Compensation Act. The basis of that compensation is not the relationship of employer and employee or master and servant nor founded on a contract of hiring, express or implied,—prerequisite in compensation matters. Cf. *James v. Shapiro,* 135 Pa. Superior Ct. 550, 556, 5 A. 2d 815; *Sgattone v. Mulholland & Gotwals, Inc.,* 290 Pa. 341, 138 A. 855; *The Pennsylvania Coal Company v. Costello,* 33 Pa. 241, 245. The court below on this phase of the case observed: "If the Act rests upon the idea of free contract, it is difficult to imagine as 'wages' the money paid to a man whose only alternative to doing the required work is to go to jail. Leaver had no other choice when he was inducted. It is impossible to conceive of the relationship between a sovereign at war and its citizens whom it forces to the colors as a contract between them: it is rather a duty insisted upon and acquiesced in.

Nor is the stipend more than a matter of grace given by Congress: theoretically, Congress could draft men for military service and not pay them at all. Congress calls its stipend 'pay'."

We merely mention here a few of the other dissimilarities between army pay and civilian wages which readily present themselves. Wages usually denote a reward or compensation for services rendered. However, a soldier, even though hospitalized for short or protracted periods of time receives his monthly pay regardless of the fact that he has performed no services. Indeed, he may receive pay for doing little or no work, for various reasons, over long periods, and the same pay for performing different kinds of work for which there is a wide variance in the pay rate in the labor market. A civilian, on the other hand, would not receive wages during such periods of unemployment, beyond sick leave allowances or vacation pay based on a negotiated labor contract, simply because no services were rendered; and different pay rates would be applicable to different kinds of work. Furthermore, army pay and civilian wages are not scheduled on the same basis; they are entirely dissimilar. No one would seriously contend that generally speaking army service constitutes remunerative employment. The background of free contract is completely lacking, as a soldier is compelled to perform whatever tasks his commanding officer requires of him and the services performed and the monthly pay received are completely divorced from and totally uninfluenced by such factors as the number of hours worked, the character and nature of the work performed or the conditions of the labor market. It follows that army pay in the circumstances disclosed, has no relation to the labor market, the ordinary conception of labor, or the idea of free contract. It is, therefore, neither a wage nor a measure of earning power during claimant's military service within the meaning of the Workmen's Compensation Act.

Judgment affirmed.