# The North American Life and Accident Insurance Co. *versus* Burroughs.

69    43
144   93

69    43
181   224

69       43
208      ¹442
24 SC    ⁴286

1. An "accident" policy of insurance stipulated, that no payment in case of accidental death should be made, unless notice of the injury and death should be given within thirty days of the happening of either, and sufficient proof furnished the company of such injury, and that the death was caused solely by such injury, and ensued within three months from the happening thereof. Written notice was given that the death was from "an injury received in the bowels, while working in a hay field, producing peritoneal inflammation." Proof was subsequently furnished by affidavit of the physician, that deceased "was killed by accident, and that the accident was occasioned by exertions made in assisting in hauling in hay, which injured the abdominal muscles, producing peritoneal inflammation," &c. This notice and affidavit made out a *primâ facie* case of death from injury resulting from accident.

2. An accidental strain, resulting in death, is an accidental injury within the meaning of the policy.

3. The words in the policy include death from any unexpected event happening by chance, and not occurring according to the usual course of things.

4. The widow for whose benefit the insurance was made, in her affidavit stated that the injury happened while the deceased "was unloading hay, when he accidentally strained himself:" the affidavit of the physician stated the death was "from an accident by exertions in hauling in hay;" the proof on the trial was that the injury was from a blow from a pitchfork while hauling in hay. *Held*, that the variance was immaterial.

5. The policy required no more than that there must be sufficient preliminary proof of the injury, that it was accidental and caused the death of the assured.

6. In his application, the assured stated his occupation to be an "earthenware manufacturer;" there was no evidence that he had changed his occupation, but the proof was that he, while on a visit at a farm, had assisted in loading hay, and there received his death injury: *Held*, that this was not a change of occupation within the meaning of the policy.

February 24th 1871. Before Thompson, C. J., Agnew, Sharswood and Williams, JJ. Read, J., at Nisi Prius.

Certificate from Nisi Prius. No. 221, to January Term 1871.

This was an action of debt, commenced December 4th 1868, by Anna L. Burroughs, against the North American Life and Accident Insurance Company (formerly the North American Transit Insurance Company), to recover the amount of an insurance on her husband, Garrett S. Burroughs, from death by accident. The policy was dated December, 13th 1866, and insured "Garrett S. Burroughs, in the sum of $5000, to be paid to Anna L. Burroughs, * * * in case of death resulting within twelve months from the date of this policy in consequence of accident. * * *

"*Provided always*, That no payment shall be due, and no claim be made, under this policy by any one on account of such accidental loss of life of the assured, unless notice of such injury and of such death shall be given to the company within thirty days after the happening of either, and sufficient proof furnished said

company of such injury, and that such death was caused solely by such accidental injury, and ensued within three months from the happening thereof.

"*And provided further*, That this insurance shall not extend to, or cover, or embrace, any death caused by natural disease, surgical operation, unreasonable imprudence."     *     *     *

Amongst the conditions were these :—

2. For the purpose of identification, notice must be given in writing to the company, at its office in Philadelphia, by the party insured, of any change of residence, name, *occupation or business.*

3. In the event of any change of avocation, occupation or business, either the policy shall be cancelled and the proportion of the premium for the unexpired term returned, or the difference for the extra hazard repaid by the assured and endorsed on the policy ; otherwise this policy shall be null and void.

4. In case of injury producing death of the assured, happening as aforesaid by accident, within the meaning of this policy, the party for whose benefit the insurance is made shall, within thirty days thereafter, give notice of the same in writing, with sufficient proof of such injury and of death.

In his application for insurance the deceased stated that his "profession or occupation," was "earthenware manufacturer."

On the 12th of August 1867, the company received the following notices :—

"To the North American Transit Insurance Company, No. 133 South Fourth Street, Philadelphia, Penn.

"You are hereby notified, that Garrett S. Burroughs, of Trenton, New Jersey, who was insured in your company, policy No. 10,980, issued December 13th 1866, came to his death by accident on the 14th day of July last.

ANNA L. BURROUGHS."

"Pennington, August 10th 1867.

"This is to certify, that Garrett S. Burroughs came to his death by an injury received in the bowels while working in a hayfield, producing peritoneal inflammation, which resulted fatally.

HENRY P. WELLING,
Attending Physician."

They also received the following affidavits :—

"Anna L. Burroughs of Trenton, being duly sworn, deposes and says, that she is the widow of G. S. Burroughs, of Trenton, New Jersey, now deceased ; that said deceased was the identical person whose life was assured against death by *accident* in the North American Transit Insurance Company, under policy No. 10,980, bearing date the 13th day of December, A. D. 1866 ; and that her late husband died in consequence of *an accident*

which happened on the 9th day of July, A. D. 1867, on this wise : said deceased, on the day aforesaid, was assisting in unloading hay in Hopewell township, New Jersey, at his grandfather's (where he had gone on a visit), when he accidentally strained himself. He immediately complained of severe pain, and a physician was summoned. All was done for his relief and recovery that could be, without success. He lingered till the 14th of said month, when he died, and the said *accident* was the direct cause of his death.          ANNA L. BURROUGHS."

Sworn and subscribed, &c., this 4th day of September, A. D. 1867.

" Henry P. Welling, of Pennington, being duly sworn, deposes and says, that he is a practising physician and a graduate of Pennsylvania University, and in regular practice in Pennington ; that he personally knew the late G. S. Burroughs, of Trenton, and knows that he was killed by *accident* on 14th day of July last ; and further, that the *accident* was occasioned by exertions made in assisting in hauling in hay, which injured the abdominal muscles, and produced peritoneal inflammation and all its concomitant symptoms, which resulted in his death on the 14th day of July last.          HENRY P. WELLING,
                                   Attending Physician."

" Sworn and subscribed to, &c., this 23d day of August, A. D. 1867."

The cause was tried at Nisi Prius, March 16th, 1870, before Mr. Justice READ.

The plaintiff testified that she and her husband had gone from their residence, in Trenton, on a visit to his grandfather's on the 4th of July, 1867.   On the 9th he went out to assist with getting in the hay ; he had been in perfect health, and was in good health at the time. * * * He came in a little before dinner ; he was in a great deal of pain. * * * We sent for the doctor who came in about two hours."

On cross-examination, she said : " My husband was secretary and treasurer of Port Richmond Pottery Company, and had charge of the manufacturing ; the company was still going on, but he had left two or three weeks previously ; he was living in Trenton all the time, and was not in any business at the time the accident occurred."

The following letter from the president of the company to her, being shown to witness, she said : " This letter was received ; I do not remember making any reply. That letter was the only objection, I remember."

" September 14th 1867.
" Mrs. Anna Burroughs :
" Dear Madam : Your claim made against this company for

[N. A. Life & Accident Ins. Co. *v.* Burroughs.]

$5000 on account of husband's death is duly received; I have examined the case thoroughly in all its bearings, and cannot discover that your husband died as the result of any injury received by accident. The doctor certifies that he died in consequence of peritoneal inflammation. No accident happened; no injury was received; no outward and visible sign was apparent. The man took sick, gradually grew worse, and five days after, he died. He may, perhaps, have been guilty of some imprudence; but his voluntary assumption of unnecessary labor cannot by any possibility be construed into an accident. We therefore decline to pay the claim."

Dr. H. P. Welling testified for the plaintiff: that on the 9th of July he was called in to see Mr. Burroughs, and found him with great pain in the bowels, found an enlargement on one side, saw no bruise. Witness further described the symptoms, and continued :—

" I was there two or three hours, and attended every day two or three times till he died. I did not see the accident. His death resulted from accident; the inflammation resulted from injury received in the bowels, produced peritoneal inflammation. That is frequently consequent upon a blow. I should say that it was the result of something external. The symptoms agreed with what I learned of the accident.   *   *   *   He told me he had been pitching hay, and the fork-handle slipped through his hand and struck him on his bowels. I inquired what produced pain, and he told me this, and I found swelling just where he said. The symptoms were consistent with this."

Dr. Samuel Murphey testified : " Peritonitis may result from such a blow as described by Dr. Welling. It is an inflammation of the external coating of the bowels. I suppose it may have been produced by the blow."

Dr. Joseph Koerper testified about as Dr. Murphey.

The plaintiff gave other evidence to maintain her case, and closed.

For the defendants, T. W. Lawford, their solicitor, testified: " Burroughs was a master manufacturer in a pottery. He did not do any labor ; he was taken as a preferred risk, as not being engaged in manual labor ; he satisfied me he was not engaged in manual labor and I took the risk."

Physicians called by defendants testisfied in substance, that in their opinion, from the description of the symptoms, the disease and the cause of Mr. Burroughs's death was not that stated by Dr. Welling ; and that he could not have told without a *post mortem* examination what occasioned the death.

Mr. Paxson, an officer of the company, who went to inquire of Dr. Welling into the cause of the death, testified that the Doctor

[N. A. Life & Accident Ins. Co. v. Burroughs.]

" made no mention of the blow. He said he was suffering from inflammation, from straining the abdominal muscles."

Dr. Woodruff testified that the plaintiff told him that Dr. Welling had said he did not think so much of the blow as the strain.

The following were defendant's points with their answers :—

1. The deceased, having been insured as an earthenware manufacturer, and a preferred risk, could not change his occupation and engage in the labor of assisting in loading and unloading hay, without rendering his policy null and void.

Answer : " The objection is, that there is no such evidence that he changed his occupation. There is no evidence that he was engaged as a farmer. The only evidence is, that he goes to his grandfather's place, and, having been on a farm in early life, he turns to and helps to load hay. I cannot therefore charge that—it is out of the question. I refuse it in the terms as it is made."

3. Unless the jury shall find that the death of the assured was caused solely by straining or injury of the abdominal muscles, and that such straining or injury was not the result of unreasonable imprudence, their verdict must be for the defendants.

Answer : " I cannot so charge. I have charged already upon that subject; for I think it is straining the case, to consider whether it was straining of the muscles or a direct injury; whether death was caused by a blow or an accident, is a matter of little consequence to the dead or the living."

4. The injury described in the proofs of loss is not an accidental injury, and, as such, was not covered by the policy, and their verdict must be for the defendants.

Answer : " I cannot so charge."

5. Sufficient proof of accidental injury, resulting in death, and that the death was caused solely by such accidental injury, was not furnished to the company.

Answer : " I decline so to charge you."

6. By the assured's change of occupation, the policy became null and void.

Answer : " He did not change his occupation at all. There is no proof that he went into any other occupation. The only proof is, that he used to be a farmer, and, being on a visit, he turned to and assisted at hay-making; what is submitted to you, is the question—First, Whether the blow spoken of by Dr. Welling was actually suffered by the deceased; Second, Whether that was the cause of his death. If you find both these things in favor of the plaintiff, then your verdict must be for the plaintiff, or ought to be. I will not say must be, for you are the judges of the facts and the credibility of the witnesses, and decide which you will credit, and reconcile any difference, and make up your own minds upon these two questions. If you find these two ques-

tions in favor of the plaintiff, the question then is simply resolved to the amount of the policy. There is no dispute about that. If you find for the defendants, of course there are no further instructions needed."

The court further charged :

" This is an action by Mrs. Burroughs against this company to recover the amount of insurance upon her husband's life, to which she is entitled if death was caused by accident. I do not intend to trouble you with any of these objections, which have been made by the defendants; for I shall submit the question to you in a way which will prevent the necessity of troubling you with the same. I shall assume these points to be decided against the defendants, and that will reduce it very much to a question of fact for you ; because I think it is very clear, that some of these technical objections—perhaps all of them—have been waived by the defendants themselves. Our courts have decided, that, where there is a difficulty about preliminary proofs, or where there is a difficulty about the conditions in a policy, that it is strictly within the power of the company to waive all the preliminary proofs, and, where they do so waive, they cannot claim them afterwards before a jury. [I shall therefore rule, that the plaintiff, in regard to all these objections, is entirely clear, and has, notwithstanding these, a case before the jury.]

" We have had a great deal of discussion about what the nature of this disease was. It was caused by some accident of some kind in a hay-field—some have called it by one name and some by another ; but I suppose it would be expected to be the case under the circumstances. Which doctor is right, is a question ; for, when experts are called to the stand, we find, in almost every case, you can arrange six on one side and six on the other. It is, after all, a simple question of fact. What are the facts ? What was stated by Mrs. Burroughs as the cause of the accident is in evidence before you, and is not contradicted. [A party who sustains an injury, and a physician is called in, the physician is enabled to describe the symptoms, and give such conversations as relate to the immediate matter as occurring between him and the patient] ; otherwise, a doctor would be cut down to simple statement of what the disease was, as it appeared to him. Now in this case, outside of the question of peritonitis, the question, I think, for you to decide is, whether that alleged blow caused the death. If you believe there was such a blow, and that it caused such a swelling as described by Dr. Welling, when the other parties' physicians were not present, all they said is entirely speculative—entirely so ; and when a physician swears to a distinct fact, and that distinct fact arises from a cause—a sufficient cause— satisfactory to him, given by the party himself, the question for you is, first, whether he was so injured, having received such a

blow; whether it was equal to the kick of a horse, or a blow struck below the belt,—a practice not allowed by prize-fighters,—and it caused death; although death may not have occurred for several days. If you decide that the blow was inflicted, and that the blow was an accident, then there was sufficient cause to bring this lady within the provisions of that policy."

The verdict was for the plaintiff for $5802.50.

The defendants had the record certified to the court in banc and assigned fourteen errors.

The 4th and 6th were to the parts of the charge in brackets.

The 7th. That the court left it to the jury to find that there was a blow from the handle of a pitchfork without competent evidence.

9–13. The answers to the defendants' 1st, 3d, 4th, 5th and 6th points.

14. Not leaving to the jury to find whether there had been a change of occupation, and in ruling that there had been no such change.

*S. Dickson* (with whom was *J. C. Bullitt*), for plaintiffs in error.—The question of waiver is for the jury, and not the court: Insurance Co. *v.* Updegraff, 7 Wright 350; Insurance Co. *v.* Schollenberger, 8 Id, 259.

The furnishing of preliminary proofs, according to the conditions of the policy, is a condition precedent to the right of recovery: Angell on Insurance, §§ 224, 225, 226 Klein *v.* Insurance Co., 1 Harris 247; Trask *v.* Insurance Co., 5 Casey 198; Insurance Co. *v.* Stauffer, 9 Id. 397.

The waiver must be intentional, and have misled the insured to rely upon it to his prejudice: Desilver *v.* Insurance Co., 2 Wright 130; Insurance Co. *v.* Schreffler, 6 Id. 188.

As to the change of occupation. The statements on the policy are to be taken as warranties: Phillips on Ins., c. ix. 892; Angell on Ins. § 140; Fire Association *v.* Williamson, 2 Casey 196; Miles *v.* Insurance Co., 3 Gray 580; Anderson *v.* Fitzgerald 24 Eng. L. & Eq. 1; Hartman *v.* Keystone Insurance Co., 9 Harris 466; Peacock *v.* Insurance Co., 20 N. Y. 293; Jennings *v.* Insurance Co., 2 Denio 75; Burritt *v.* Insurance Co., 5 Hill 188; Wall *v.* Insurance Co., 14 Barb. 383. The condition against change of avocation being of the nature of a warranty, is to be literally complied with: Angell on Insurance, § 140, *et seq.* Whether the thing warranted be material or not, and whether the loss happen by reason of a breach of the warranty, or did not, is immaterial: 3 Kent Com. 424 (312*); Elliot *v.* Wilson, 7 Bro. P. C. 459; Phillips on Insurance, chap. 9, 866, and cases referred to, Id. 868; Bunyan on Life Assurance 68; Vyse *v.* Wakefield, 6 M. & W. 442; Hathaway *v.* Ins. Co., 11 Cush. 448.

19 P. F. SMITH—4

[N. A. Life & Accident Ins. Co. *v.* Burroughs.]

*J. H. Sloan* (with whom was *J. Goforth*), for defendant in error, as to change of occupation cited: The West Branch Ins. Co. *v.* Helfenstein, 4 Wright 289; McAnally *v.* Somerset M. Ins. Co., 17 Leg. Int., 244; Perrins *v.* Marine & General Travellers' Ins. Soc., 6 Jur. N. S. 627.

The opinion of the court was delivered, October 9th 1871, by WILLIAMS, J.—In this case the jury have found, on sufficient evidence, that while the insured was pitching hay, the handle of the pitchfork slipped through his hands and struck him on the bowels, inflicting an injury, which produced peritoneal inflammation, in consequence of which he died; that the blow which he received from the fork-handle was an accident and the cause of his death. The case, therefore, comes directly within the terms of the policy declared on. But it is objected that the plaintiff was not entitled to recover, because no sufficient preliminary proof was furnished to the company that the death of the insured was caused solely by an accidental injury; that the injury, described in the preliminary proofs of loss furnished by the plaintiff, is not an accidental injury within the meaning of the policy, and is not covered by its provisions. The policy provides that no payment shall be due, and no claim be made under it, on account of the accidental loss of life of the assured, unless notice of the injury and of the death shall be given to the company within thirty days after the happening of either, and sufficient proof furnished said company of such injury, and that such death was caused solely by such accidental injury, and ensued within three months from the happening thereof. Substantially the same provision is also contained in the fourth condition of the policy: In case of injury producing death of the assured, happening as aforesaid by accident, within the meaning of this policy, the party for whose benefit the insurance is made shall within thirty days thereafter give notice of the same in writing, with sufficient proof of such injury and of death.

Notice was given to the company on the 12th of August 1867, within the time limited by the policy, that the assured came to his death by accident on the 14th of July, by an injury received in the bowels, while working in a hay-field, producing peritoneal inflammation, which resulted fatally. And in proof thereof, the affidavits of the plaintiff and attending physician were subsequently furnished to the company. No objection was made to the affidavits, on the ground that they were not furnished in time, and, under the evidence, no such objection could have been properly made. The only objection then and now made to the affidavits, is that they do not show that the assured "died as the result of any injury received by accident." But if the facts stated in the affidavits are true, why do they not make out a primâ facie case of death resulting from an injury occasioned by accident?

[N. A. Life & Accident Ins. Co. *v.* Burroughs.]

The plaintiff's affidavit expressly avers "that her late husband died in consequence of an accident which happened, on the 9th of July 1867, on this wise: said deceased, on the day aforesaid, was assisting in unloading hay in Hopewell township, New Jersey, at his grandfather's, where he had gone on a visit, when he accidentally strained himself. He immediately complained of severe pain, and a physician was summoned. All was done for his relief and recovery that could be, without success. He lingered till the fourteenth of said month, when he died, and the said accident was the direct cause of his death." And the attending physician, after stating in his affidavit that he personally knew the assured, says that he "knows that he was killed by accident on the 14th day of July last; and further, that the accident was occasioned by exertions made in assisting in hauling in hay, which injured the abdominal muscles, and produced peritoneal inflammation and all its concomitant symptoms, which resulted in his death on the 14th of July last." If the facts set forth in these affidavits be true, and they are perfectly consistent and reconcilable, do they not show with reasonable certainty that the death of the assured was caused by an accident? Taking both affidavits together they substantially allege that the assured, while assisting in hauling in, and unloading hay, accidentally strained himself, injuring his abdominal muscles and producing peritoneal inflammation, which resulted in his death; and, that the said accident was the direct cause of his death; and if so, can there be any doubt as to the sufficiency of the preliminary proof? But it is said, that if the assured strained himself while unloading hay it was not an accident insured against within the meaning of the policy. Why not, if he *accidentally* strained himself, as is averred in the plaintiff's affidavit? Why is not death resulting from an accidental strain as much within the meaning of the policy, as death produced by any other accidental cause? If the injury be accidental, and the result of it death, what matters it whether the injury is caused by a strain or blow? An accident is "an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected; chance; casualty; contingency." And accidental signifies, "Happening by chance or unexpectedly; taking place not according to the usual cause of things; casual; fortuitous. We speak of a thing as accidental when it falls to us as by chance and not in the regular course of things; as an accidental meeting, an accidental advantage, &c." Webster's Dictionary *ad verba*. If then these words, as used in the policy, are to be understood in their plain and ordinary meaning as thus defined, they include death from any unexpected event which happens as by chance, or which does not take place according to the usual course of things. And there is no more reason for regard-

ing an injury of the abdominal muscles, caused by an unexpected blow, an accident than an injury caused by a casual and unlooked for strain. If the death of the assured resulted from an accidental strain, then it was not "caused by natural disease." And if it resulted from any accidental strain, it does not follow that it was caused by "unreasonable imprudence," or "the doing of an unlawful act," and there is nothing in the affidavits from which such an inference can be fairly drawn. Taking the facts to be as stated in the affidavits they undoubtedly make out a primâ facie case of death resulting from an injury accidentally received; and if so, the preliminary proof furnished by the plaintiff must be regarded as sufficient, and there was no error in refusing the defendant's fourth and fifth points.

Whether the plaintiff was entitled to recover on showing that the death of the assured resulted from an injury of the abdominal muscles, caused by a blow, and not by an accidental strain, is another question raised by the defendant's third point, which we shall now proceed to consider. No objection was made to the admission of the evidence on the ground of variance, and the only question is whether the plaintiff, under the preliminary proof, was entitled to recover for death resulting from an accidental injury, shown to have been caused by a blow instead of a strain. The policy does not expressly require that preliminary proof shall be furnished of the mode and manner in which "the injury producing death" was inflicted; but only that "sufficient proof be furnished of *the injury* and that such death was caused solely by such accidental injury." The affidavit of the attending physician describes *the injury* which the assured received, and in consequence of which he died, precisely as it was proved by his testimony on the trial. The only difference between them is that in the former the cause of the injury is not stated otherwise than by terming it "an accident," and in the latter, it is shown to have been caused by an accidental blow from the handle of a pitchfork. But the injury, as described in both, is in all respects the same and its results are the same. If then "the injury producing death" is correctly described in the preliminary proof, why shall not the plaintiff be allowed to recover though she may have imputed it to a wrong cause,—to a strain instead of a blow? It seems to us that under the terms of the policy the plaintiff is entitled to recover if she has given sufficient preliminary proof of the injury though she may have unwittingly ascribed it to a wrong cause. It is not such a variance as should be regarded as fatal. Undoubtedly there must be sufficient preliminary proof of the injury, that it was accidental, and the cause of the death of the assured. These requisites are all found in the preliminary proof furnished by the plaintiff in this case; and they are all that the policy requires. If the injury, as described in the affidavit of the attending physician, was the cause of the death of

the assured, it is a matter of no consequence so far as respects the liability of the company, whether it was produced by an accidental strain or by an unexpected blow from the handle of a pitchfork.

But it is further objected to the plaintiff's right of recovery that the assured did not give notice of the change of his occupation, nor pay the difference of premium for the extra hazard, as required by the second and third conditions of the policy, and therefore the contract became null and void. But there was no evidence that the assured had changed his occupation or business, and the learned judge before whom the case was tried rightly refused to submit the question to the jury. The assured, as was shown, while on a visit to his grandfather, had assisted in hauling in and unloading hay. But this was not a change of his occupation or business within the meaning of the policy. To give to the word such a construction would prevent the assured from performing any act or service outside of his usual avocation or business without rendering the policy null and void. Such a construction would be unreasonable and absurd, and the defendant's 1st and 5th points were properly refused.

The 1st, 2d, 3d, 5th and 8th assignments are not in accordance with the rules and must be disregarded; but if properly made there is nothing in them which would avail the plaintiff in error. The 6th and 7th assignments are not sustained, and there is nothing in them that calls for special notice. The questions presented by the remaining assignments (the 9th, 10th, 11th, 12th, 13th and 14th) have been already considered, and as we discover no material error in the record the judgment is affirmed.

Judgment affirmed.