18

Yoder *v.* United Benefit Life Insurance Company, Appellant.

Argued March 21, 1952. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Gunther, JJ.

*Frederick G. McGavin,* with him *Stevens & Lee,* for appellant.

*Russell H. Yoder,* for appellee.

OPINION BY RENO, J., July 17, 1952:

On November 7, 1945, appellant issued to David E. Yoder a policy of insurance, upon the top of the first page whereof appeared this legend: "This Policy Provides *Benefits* for Loss of Life, Limb, or Sight, from Accidental Bodily Injuries, and *Benefits* for Hospital and Certain Other Expense to the Extent Herein Provided." The policy insured Yoder "against loss because of hospital and certain other expenses resulting from such injuries or such sickness," and defines: "(b) the term, such sickness, as used in this policy, shall mean sickness, the cause of which originates while this policy is in force and more than thirty days after the Policy Date (except tuberculosis, heart trouble, appendicitis, hernia, or any other sickness resulting in a surgical operation, in which cases the cause must originate more than six months after the Policy Date); and promises to pay indemnity to the Insured (or to the hospital or ambulance company, if authorized by the Insured to do so) to the extent hereinafter limited and provided". There follow paragraphs describing "Hospital Room Expense *Benefits*", "Additional Hospital Expense *Benefits*", and "Ambulance Expense *Benefits*". (Emphasis added.)

For an additional premium, the insurer attached a "Surgical Operation *Benefits* Rider" whereby the insurer agreed to pay insured surgeon's fees for certain enumerated operations not to exceed specified amounts, among them: "Herniotomy (Repair of single hernia) $50.00." Following the schedule of operations is this provision: "The payment of any one of the above listed amounts, whichever is greater, shall discharge all li-

ability under this rider for any one period of *disability*." (Emphasis added.)

In his application Yoder stated that he had a "small hernia" and "Wear a Truss." Accordingly the insurer wrote at the foot of the policy: "This policy is issued on the condition that *benefits* shall not accrue for *disability* resulting from *hernia*. The insured agrees to this endorsement by the acceptance of this policy." (Emphasis added.)

From July 3 to July 12, 1950, Yoder incurred expenses[1] in a hospital, and sued in assumpsit to recover $143.85.[2] The operation occurred more than 6 months after the policy became effective. The case was tried without a jury and the judge, holding that the words "disability resulting from hernia" in the endorsement referred only to loss of earnings and therefore did not exclude recovery for the benefits mentioned in the policy, entered judgment for plaintiff, which was approved by the court en banc. This appeal followed.

The word "disability" may indeed relate to loss of earnings or earning power. It does have that meaning under some provisions of the Workmen's Compensation and the Occupational Disease Acts. See *Hughes v. H. Kellogg & Sons*, 139 Pa. Superior Ct. 580, 13 A. 2d 98; *Leaver v. The Midvale Co.*, 162 Pa. Superior Ct. 393, 57 A. 2d 698. But it does not have that meaning in every context. Sickness or disease is also a disability. 7 Couch Cyclopedia of Insurance Law, §1683. See *Butler v. Prudential Ins. Co.*, 117 Pa. Superior Ct. 367, 177 A. 335. The instant policy covers specified losses, not including loss of earnings. It is not a dis-

---

[1] Robert A. Scribner, surgical operation benefit, $50.00; St. Joseph's Hospital, room expenses benefit, $31.50; routine laboratory service, $5.00; operating room, $15.00; anesthetic, $25.00; routine medicine and dressings, $17.35; total: $143.85.

[2] Yoder died during the pendency of the litigation and his wife, the beneficiary in the policy, was substituted as plaintiff.

ability insurance policy. See 44 C. J. S., Insurance, §12. Nowhere does it insure Yoder against the loss of earnings; it indemnified him only against losses resulting from injuries and sicknesses, the losses, in the latter instance, being limited to sums of money he would be required to pay for surgeon's fees and hospital expenses. Since the policy did not cover loss of earnings, the elimination clause, given the construction adopted by the court below, would exclude from its operation a provision which was not included within the terms of the policy itself. It cannot be supposed that the insurer would seek by an endorsement to eliminate a term which obviously had not been written into the policy.

Moreover, the word "disability" was employed in the contract to include both injuries and sicknesses. The rider which provided a schedule of amounts payable on account of operations, necessitated by sickness as well as by injuries, contained a provision, quoted above, wherein "disability" refers to both injuries and sicknesses, and manifestly has no relation to loss of earnings. "Sickness", "injuries", and "disability" are used interchangeably, and all refer only to physical incapacitation which requires hospital treatment.

"Benefits" is the important and dominating word in both the policy and the endorsement. The policy assures "benefits" to the insured; the endorsement withholds "benefits". The policy covers "benefits" of several kinds for various injuries and sicknesses. It includes, as a sickness, hernia which originates more than 6 months after its effective date. Without the endorsement, Yoder could have recovered the "benefits" resulting from the hernia, since it originated[3]

---

[3] Although Yoder had a hernia at the time the policy became effective, appellant admitted at the trial that the sickness which required the operation "originated more than six months after the Policy Date."

more than 6 months after that date. But since he was already afflicted with a hernia the exclusionary endorsement was added to eliminate his existing sickness from the operation of the policy. The purpose of the endorsement was to exclude benefits for an affliction which the insured had revealed in his application, and for that purpose the insurer employed apt and clear terms. The endorsement must be read in the light of the terms of the policy, and so read it must be rendered as: "The policy is issued on the condition that *benefits* shall not accrue for *disability* [*injuries* or *sickness*] resulting from *hernia*."

Of course, if one reads "disability" as though the endorsement injected a new term into the policy, or as though the endorsement were a precautionary measure to foreclose claims for an item of indemnity, loss of earnings, an artificial ambiguity can be fabricated and a doubt conjured up for the benefit of the insured, a type of specious construction condemned by Mr. Justice SIMPSON in *Urian v. Scranton Life Ins. Co.*, 310 Pa. 144, 151, 165 A. 21. If that had been the purpose of the endorsement, most assuredly it would not have been restricted to "disability resulting from hernia". It would have been drawn broadly and comprehensively, so that, whatever the sickness or injury, loss of earnings could not be claimed as a disability in any case. If a doubt exists as to the meaning of an insurance policy it should be resolved in favor of the insured, but where, as here, the "language is clear and unambiguous [it] cannot be construed to mean otherwise than what it says": *Levinton v. Ohio Farmers Ins. Co.*, 267 Pa. 448, 452, 110 A. 295. Furthermore, the stipulations of an exclusion endorsement on an insurance policy apply only to the provisions included within the policy and do not create a further or different liability. *Hollobaugh v. Peoples' Ins. Assn.*, 138 Pa. 595, 22 A. 29.

The judgment is reversed and here entered for defendant.