**ROBERT HAWTHORNE, Inc.**

v.

**LIBERTY MUTUAL INSURANCE COMPANY.**

Civ. A. No. 18734.

United States District Court
E. D. Pennsylvania.

May 7, 1957.

Edward A. Kallick and Nathan I. Miller, Philadelphia, Pa., for plaintiff.

J. B. H. Carter, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This is an action against an insurance company for recovery of sums expended in the defense of, and settlement of, damage suits brought against plaintiff, for which damages plaintiff claims the insurance company had contracted to indemnify it.

This matter comes before the court without a jury on a "Stipulation of Facts" filed February 18, 1957, and a "Stipulation of Counsel" [1] filed April 3, 1957, of which the following is a summary:

In January of 1953 the plaintiff contracted to demolish the Colonial Theatre building in Philadelphia, Pa. On September 1, 1952, the defendant insurance company had issued to plaintiff a Comprehensive General Liability Policy for a term of one year, indemnifying plaintiff against liability for public liability and property damage, and a rider applying to the Colonial Theatre project (hereinafter called "No. 21") was attached to this policy as of January 26, 1953. The work commenced on or about January 28 and the plaintiff placed planks on the roof of an adjoining building, owned by Walter Stuempfig, Jr. and William and Rachel T. Stuempfig and occupied by Germantown Fur, Inc., to catch debris should any fall during the course of the demolition. During the demolition, debris fell from time to time upon the aforesaid planks and upon the roof adjoining the area covered by the planks, but caused no damage to the exterior of the roof. Such debris was removed by plaintiff from time to time prior to completion of the demolition work on or about March 21, 1953, and was completely removed on or before May 15, 1953, by which date plaintiff was off the job site.

1. The parties have agreed in this stipulation to waive a jury trial, pursuant to the Federal Rules of Civil Procedure 39 (a), 28 U.S.C.

On or about July 6, 1953, the ceiling of a fur vault in the premises leased by Germantown Fur, Inc., collapsed due to the falling of the debris upon the roof during the demolition work.

The owners of the adjoining building (claiming damage to the interior of the building) and the Germantown Fur, Inc. (claiming damage to its fur storage vault and furs stored in it) both instituted trespass actions in the fall of 1953 against the plaintiff in the state courts. The defendant refused to defend the actions, admitting responsibility only for any damage to the exterior roof surface which occurred while plaintiff was on the job, but not for the falling of the ceiling of the fur vault and other interior damage (including damage to fur coats) which occurred after plaintiff had left the job.

After waiver by defendant of paragraph 11 of the policy, making the entry of final judgment a prerequisite to liability under the policy, plaintiff settled both suits for $2,150 to the owners of the adjoining building and $22,500 to the fur company, and brings this action to recover these latter amounts, plus attorney's fees of $4,250 and other costs of $982.55, in the total amount of $29,882.55.

■ In construing the defendant's liability under the policy, the law of Pennsylvania governs.[2]

The insuring agreement in the policy covering property damage liability contains this language:

"Liberty Mutual Insurance Company agrees with the insured * *

"Coverage B—Property Damage Liability

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property * * * caused by accident."

Since the insured became "legally obligated to pay" the above-mentioned $29,882.55, as those words are used in the above clause if the falling of the debris on the planks and the roof is an "accident," as that term is used in the above-quoted clause, and such accident caused the damage, the two principal questions for decision are:

1. Was the falling of the debris on the roof and the planks an "accident" under the terms of the policy?

2. Assuming question 1 is answered in the affirmative, do any of the exclusions or conditions in the policy relieve the defendant of liability?

**I. Falling of the Debris on the Roof**

■■ The falling of the debris on the roof and the planks in the quantity, over the area, and with the force involved in this case was an "accident" within the meaning of that word as construed by the Pennsylvania cases. The Pennsylvania Supreme Court has stated that "that which distinguishes an accident from other events is the element of being unforeseen; an accident is an occurrence which proceeds from an unknown cause, or which is an unusual effect of a known cause, and hence unexpected and unforeseen." Lacey v. Washburn & Williams Co., 1933, 309 Pa. 574, 578, 164 A. 724, 725.[3]

2. Since the contract of insurance was made in Pennsylvania and was to be performed in Pennsylvania, the law of that state controls. See McLouth Steel Corp. v. Mesta Machine Co., 3 Cir., 1954, 214 F. 2d 603, 609; Faron v. Penn Mutual Life Ins. Co., 3 Cir., 1949, 176 F.2d 290; 1 Couch, Cyclopedia of Insurance Law, §§ 193 and 194.

3. See, also, Springfield Twp. v. Indemnity Ins. Co., 1949, 361 Pa. 461, 463, 64 A. 2d 761. In Hey v. Guarantors' Liability,

etc., Co., 1897, 181 Pa. 220, 224, 37 A. 402, the Pennsylvania Supreme Court reviewed the definitions of "accident:"

"This leads us to consider what an accident is. The definitions of an 'accident,' as given in the Century Dictionary, are, among others, as follows: '(1) In general, anything that happens, or begins to be without design, or as an unforeseen event. (2) Specifically, an undesirable or unfortunate happening; an undesigned harm or injury; a casualty or mishap.'

Although the placing of the planks on the roof of the adjoining building indicates that plaintiff anticipated that some debris would fall near the wall of the building being demolished, the fact that these planks were laid flat on the roof without any support from the front and rear walls of this building, that debris fell on the roof beyond the area covered by the planks, and that the debris had to be removed from the roof from time to time shows the unexpected and unforeseen consequences of the removal of this wall by the clam bucket.[4] The stipulations (paragraphs 3 of 2/15/57 and 5 of 4/1/57) make clear that the falling of this debris caused the collapse of the ceiling in the fur vault and the resulting damage to the furs.[5] The Pennsylvania cases also make clear that the

In Bouvier's Law Dictionary, 'accident' is defined as 'an event which, under the circumstances, is unusual, and unexpected by the person to whom it happens. The happening of an event without the concurrence of the will of the person by whose agency it was caused; or the happening of an event without any human agency.' In Anderson's Law Dictionary, the following definitions of 'accident' are given, with citation of authorities: 'An event or occurrence which happens unexpectedly from uncontrollable operations of nature alone, and without human agency; or an event resulting undesignedly and unexpectedly from human agency alone, or from the joint operation of both. An event from an unknown cause, or an unusual or unexpected event from a known cause; chance, casualty.' A definition corresponding substantially with those quoted above may be derived from our own case of [North American Life and Accident] Insurance Co. v. Burroughs, 69 Pa. 43. The principle of that decision is that an accident is an unusual or unexpected result attending the operation or performance of a usual or necessary act or event. To the same effect is Burkhard v. [Travellers'] Ins. Co., 102 Pa. 262."
See, also, Hamilton v. American Indemnity Co., 1923, 82 Pa.Super. 191, 194, and Hauenstein v. Saint Paul-Mercury Indem. Co., 1954, 242 Minn. 354, 65 N.W.2d 122, 126.

4. See paragraphs 2–3 of stipulation of 2/15/57 and paragraphs 2–4 of stipulation of 4/1/57. Counsel stated to the hearing judge that a clam bucket suspended from a crane placed inside the building being demolished was used to remove this brick wall. It is clear that an occurrence may be an accident even though it involves negligence. See Hardware Mut. Ins. Co. of Minn. v. C. A. Snyder, Inc., 3 Cir., 1957, 242 F.2d 64, 68, where the court concluded, after analyzing the Pennsylvania cases:

" 'Accident' is a word of broad scope and includes many unfortunate occurrences not anticipated in the ordinary course of affairs. The wilful act is not embraced by the word, but the negligently-caused happening is understood to be an 'accident.' "

5. The intent of the parties to this contract appears to have been to provide coverage for accidents resulting in damages of this type, namely, the collapse of a ceiling in an adjoining building, due to the fall of debris, while plaintiff was doing demolition work. It seems clear that the word "accident," was intended to be construed from the point of view of cause rather than effect. Cf. Tri-State Roofing Co. v. New Amsterdam Casualty Co., D.C.W.D.Pa.1955, 139 F.Supp. 193; St. Paul-Mercury Indemnity Co. v. Rutland, 5 Cir., 1955, 225 F.2d 689; Heyward v. American Casualty Co. of Reading, Pa., D.C.E.D.S.C.1955, 129 F.Supp. 4. Milwaukee & St. P. Railway Co. v. Kellogg, 1876, 94 U.S. 469, 474–475, 24 L.Ed. 256; Berger Bros. Electric Motors v. New Amsterdam Cas. Co., 293 N.Y. 523, 58 N. E.2d 717, 156 A.L.R. 1281; Baker v. Maryland Casualty Co., 1948, 73 R.I. 411, 56 A.2d 920; United States Fid. & Guar. Co. (Baltimore, Md.) v. Reinhart & Donovan Co., 10 Cir., 1948, 171 F.2d 681; and Smith v. U. S. Fidelity & Guaranty Co., 142 Neb. 321, 6 N.W.2d 81, relied on by defendant, involved independent intervening actions by some individual or individuals after the insured left the job premises, resulting in the damages involved.

Anchor Casualty Co. v. McCaleb, 5 Cir., 1949, 178 F.2d 322, 324, 325, relied on by defendant for the proposition that one cause resulting in injuries to many individuals involves a separate accident to each individual, is not in point on the facts before this court. There the intermittent blowing-out of an oil well was held to involve many accidents within the intent of parties as to coverage under the policy of insurance. The limit of $5,000 for each accident under coverage B did not apply to a catastrophe of that type, against which the court pointed out that the insured inserted in the policy the limit of $25,000 for aggregate dam-

accident need not be the sole cause of, nor need it occur contemporaneously with, the "injury to or destruction of property." See Trexler Lumber Co. v. Allemannia Fire Ins. Co., 1927, 289 Pa. 13, 18, 136 A. 856; Neely v. Provident Life & Accident Insurance Co., 1936, 322 Pa. 417, 185 A. 784; Dale v. Standard Accident Ins. Co., 1932, 307 Pa. 398, 161 A. 307; Marks v. Lumbermen's Ins. Co., 1946, 160 Pa.Super. 66, 68, 49 A.2d 855; cf. Denham v. La Salle-Madison Hotel Co., 7 Cir., 1948, 168 F.2d 576, 582–583; Hyer v. Inter-Insurance Exchange, 1926, 77 Cal.App. 343, 246 P. 1055.

## II. *Exclusions and Conditions of the Policy*

Rider 21 [6] contains this paragraph 2:

"2. Exclusion. This endorsement does not apply to accidents which do not occur during the course of the operations."

▆▆▆ Independent of the falling of the debris on the roof, it seems clear that

the unexpected and unforeseen falling of the ceiling of the fur vault in July, after operations had been completed on May 15, was not covered by the terms of the policy in view of the above-quoted paragraph of Rider 21.[7] Where it is clear that there is no coverage under a policy, the Pennsylvania cases make clear that an insurer will not be held liable for risks that it has not assumed. See Allen v. Insurance Co. of North America, 1954, 175 Pa.Super. 281, 104 A.2d 191; Skelly v. Fidelity & Cas. Co., 1933, 313 Pa. 202, 169 A. 78; Ehrlich v. United States Fidelity & Guaranty Co., 1947, 356 Pa. 417, 51 A.2d 794. However, as explained above, the falling of the debris in quantity over the area, and with the force involved during the course of operations, was an "accident" under the Pennsylvania cases, and it is admitted that it caused this damage. This exclusion does not say that the "injury to or destruction of property," quoted from the first page of the policy at page 3 above, is

---

age. The court there found that "the term 'aggregate' was meant to serve as a total limit of damage to property of different persons from a closely related series of events, such as were evident in this case." The court also twice mentioned that the wind acted "as a supervening force" and "changed from time to time, blowing mud and sand on different properties." For a similar discussion of the Anchor case, see St. Paul-Mercury Indemnity Co. v. Rutland, 5 Cir., 1955, 225 F.2d 689, 693.

6. The material parts of this rider read as follows:

"Increased limits (Designated Project)
"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability applies subject to the following provisions:

1. Increased Limits. With respect to operations of the named insured * * in connection with the project designated herein, the limits of the company's liability shall be as stated herein subject to all of the terms of the policy having reference thereto.

2. Exclusion. This endorsement does not apply to accidents which do not

occur during the course of the operations.
Project. Colonial Theatre, Germantown, Phila., Penna.,
*      *      *      *      *
Effective Date    January 26, 1953  1:40 P.M.
Expiration Date    September 1, 1953
*      *      *      *      *
Issued 2/2/53"

7. An endorsement or rider attached to an insurance policy becomes and forms a part of the contract and will be construed with the basic policy to determine the intention of the parties. Lumbermens Mut. Cas. Co. v. Sutch, 3 Cir., 1952, 197 F.2d 79, 82; Yoder v. United Benefit Life Ins. Co., 1952, 171 Pa.Super. 18, 22, 90 A.2d 399; see, also, Globe Indemnity Co. v. Liberty Mut. Ins. Co., D.C.E.D. Pa.1942, 45 F.Supp. 9, 11, affirmed 3 Cir., 1943, 138 F.2d 180, 183; 1 Couch, Cyclopedia of Insurance Law, § 159 at p. 312. A rider, "being a later expression of intention, must control the policy itself in so far as it enlarges, modifies, or restricts the terms thereof, since it is a special statement relating to the subject involved, [and] it must be presumed to express their exact agreement thereon * * *." Morris v. American Liability & Surety Co., 1936, 322 Pa. 91, 95, 185 A. 201, 203. See, also, Stallani v. Belt Auto. Ind. Ass'n, 1925, 85 Pa.Super. 224.

not covered by the policy if it also can be described as an accident.[8] Under these circumstances, defendant has not sustained its burden of showing the application of this exclusion clause.

■ It has been consistently recognized by the Pennsylvania courts that defendant has the burden of proving that an exclusionary provision in the policy is applicable. Armon v. Aetna Casualty & Surety Co., 1952, 369 Pa. 465, 469, 87 A.2d 302; Barnes v. North American Acc. Ins. Co., 1954, 176 Pa.Super. 294, 107 A.2d 196; Richman v. Home Insurance Co. of N. Y., 1953, 172 Pa.Super. 383, 94 A.2d 164. See, also, Al Berman, Inc., v. Aetna Casualty & Surety Co., 3 Cir., 1954, 216 F.2d 626.

Endorsement Serial No. 19, "Exclusion of Property Damage Liability Arising From Certain Collapse Hazards (Superseding Endorsement No. 2)," reads as follows:

"It is agreed that such insurance as is afforded by the policy for Property Damage Liability * * * does not apply to injury to * * * property arising directly or indirectly from * * * structural injury to any building or structure due to

* * * demolition of any building or structure * * *, except while such operations are being performed for the named insured by independent contractors."

■ The plaintiff is not excluded from coverage by this endorsement since "the injury to property" here involved, i. e., the damage to the roof of the abutting building and the collapse of the ceiling of the fur vault, did not arise, directly or indirectly, from "structural injury to any building or structure." These damages do not require extensive alterations which materially affect the basic structure of the building, its characteristic appearance, or the use that can be made of it, and were capable of repair with no structural injury.[9]

It is clear, both from the "X" [10] opposite aggregate products in Item 3 and from Endorsement Serial 11,[11] that no coverage was provided for "products hazard," as those words are defined in this policy, so that no consideration need be given to the terms of condition 3(c).[12]

■ Any application of Exclusion (d) (3) to this situation would make its meaning so ambiguous that reliance upon it by defendant is precluded by the well

8. The fact that this damage was unforeseen and, hence, may also have fallen under the term "accident" does not prevent it from being caused by a previous "accident" occurring "during the course of the operations."

9. Structural change has been defined as "such a change as to affect a vital and substantial portion of the premises, as would change its characteristic appearance, the fundamental purpose of its erection, or the uses contemplated, or a change of such a nature as would affect the very realty itself—extraordinary in scope and effect, or unusual in expenditure." United States v. Cox, D.C.W.D. Mo.1949, 87 F.Supp. 288, 289; Peter Doelger, Inc., v. Metropolitan Casualty Ins. Co., City Ct.1941, 28 N.Y.S.2d 336, 338; Bertsch v. Small Investments, 1950, 4 N.J. 520, 73 A.2d 346, 348. See, also, United States v. Certain Lands, etc., D.C. W.D.Mo.1946, 66 F.Supp. 572, 575; Hardware Mut. Casualty Co. v. Hilderbrandt, 10 Cir., 1941, 119 F.2d 291, 300;

Zeliner v. Linn, Sup.1954, 59 N.Y.S.2d 654, 656, 657; Vol. 40, Words and Phrases, Structural Change, p. 321.

10. Item 3 of the Policy provides: "The letter 'X' in any premium space shall mean that no insurance is afforded with respect to the coverage opposite thereto." See, also, first sentence of Condition 6, relating "aggregate products" to the "products hazard."

11. Endorsement Serial 11 provides:
"Exclusion of Products Hazard
"It is agreed that the policy does not apply,
"1. to the products hazard as defined in the policy; * * *".

12. Cf., also, Liberty Mutual Insurance Co. v. Hercules Powder Co., 3 Cir., 1955, 224 F.2d 293, 295, making clear that these words concern products made and used by the insured, rather than products of third parties such as these furs.

recognized Pennsylvania rule construing against the insurer any ambiguous provisions of a contract of insurance. See Western Ins. Co. v. Cropper, 1859, 32 Pa. 351; Snader v. London & Lancashire Indemnity Co., 1949, 360 Pa. 548, 62 A.2d 835.

### Order

And now, May 7, 1957, it is ordered that judgment be entered in favor of the plaintiff, Robert Hawthorne, Inc., and against the defendant, Liberty Mutual Insurance Company, in the amount of $29,882.55, with costs.